# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Paige Scholin, *individually, and on behalf of the Digi-Key Corporation 401(k) Profit Sharing Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan*, | File No. 26-CV-1485 (JMB/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Digi-Key Corporation, Digi-Key Corporation 401(k) Profit Sharing Plan Committee, John and Jane Does 1-30 *in their capacities as fiduciaries and members of the Committee*, | |
| Defendants. | |

Bryan L. Bleichner, Christopher P. Renz, and Philip Joseph Krzeski, Chestnut Cambronne PA, Minneapolis, MN; and Alexandr Rudenco (*pro hac vice*), Milberg PLLC, Knoxville, TN; for Plaintiff Paige Scholin.

Andrew Leiendecker, Keith S. Moheban, Sarah Almquist, and Todd A. Noteboom, Stinson LLP, Minneapolis, MN, for Defendants Digi-Key Corporation and Digi-Key Corporation 401(k) Profit Sharing Plan Committee.

This matter is before the Court on Defendants Digi-Key Corporation and Digi-Key Corporation 401(k) Profit Sharing Plan Committee's (Defendants) Motion to Dismiss. (Doc. No. 21.)  For the reasons explained below, the Court grants the Motion.

## BACKGROUND

Defendant Digi-Key Corporation (Digi-Key) is a company based in Minnesota that administers the Digi-Key 401(k) Profit Sharing Plan (the Plan).  (Doc. No. 1 [hereinafter,

1

"Compl."] ¶¶ 1, 17.)  Plaintiff Paige Scholin is a former employee of Digi-Key and participant in the Plan.  (*Id.* ¶¶ 13–14.)

Digi-Key, like many other 401(k) plan participants, uses target date funds (TDFs). (*Id.* ¶¶ 27, 62.)  TDFs allocate assets over time based on a participant's targeted retirement date.  (*Id.* ¶ 27.)  For instance, a TDF with a name like "Retirement Fund 2040" is designed for individuals who intend to retire in or near the year 2040.  (*Id.* ¶ 28.)  Investors change their asset allocation strategy as a participant approaches her expected retirement date.  (*Id.* ¶ 27.)  As TDFs approach and pass the target retirement date, they become less focused on growth and more focused on preservation; this transition from higher to lower risk is called the "glide path."  (*Id.* ¶ 33.)  American Century Investments (AC) is an investment management company that manages the American Century One Choice target date fund series (AC TDFs), which Digi-Key retained from 2018 through at least the end of 2023. (*Id.* ¶¶ 29, 62.)  AC TDFs comprised approximately 75% of the Plan's assets from 2020 to 2023.  (*Id.* ¶ 41.)

The Plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), which imposes, among other fiduciary duties, a duty of prudence.  (*Id.* ¶¶ 11, 22.)  ERISA's duty of prudence requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

Scholin alleges that the AC TDFs "consistently underperformed other prudent target date series options" and that a prudent fiduciary "would have determined that [the AC

TDFs'] investment performance was inferior, its risk-adjusted performance was inferior, and that its glide path and investment philosophy were being rejected by the data and the market, and thus removed the AC TDF by early 2020, at the latest." (Compl. ¶¶ 64–65.)

Scholin initiated this lawsuit in February 2026. (*Id.* at 45.) Scholin brings two claims: breach of fiduciary duty of prudence (*id.* ¶¶ 126–37) and failure to adequately monitor other fiduciaries under ERISA (*id.* ¶¶ 138–44). Scholin alleges that Defendants breached the duty of prudence "by selecting and continuing to retain a severely underperforming TDF option across all metrics instead of removing it in favor of better and available options." (*Id.* ¶ 130.) Scholin claims that a prudent plan fiduciary would have considered and compared the AC TDFs to the Capital Group Target Retirement Series (also known as American Funds), the Vanguard Target Retirement Series, the T. Rowe Price Target Series, and the BlackRock LifePath Index series (comparator TDFs). (*Id.* ¶ 61.) As to the failure to monitor claim, Scholin alleges that Digi-Key breached this duty by failing to monitor and evaluate the individuals responsible for Plan investment management, failing to monitor the process by which Plan TDFs were evaluated, and failing to remove individuals responsible for Plan management. (*Id.* ¶ 142.)

## DISCUSSION

Defendants have moved to dismiss. On a motion to dismiss under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court

3

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In this analysis, courts construe the allegations and draw inferences from them in the light most favorable to the plaintiff.  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).  However, courts will not give plaintiffs the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Because the Complaint fails to plausibly plead a claim for breach of the duty of prudence, the Court grants Defendants' Motion to Dismiss.[1]

## I.   BREACH OF THE DUTY OF PRUDENCE

Defendants argue that Scholin's imprudence claim fails because Scholin has not plausibly alleged a meaningful benchmark.  (Doc. No. 22 at 23–30.)  The Court agrees.

Under ERISA, "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach," together with other enumerated relief.  29 U.S.C. § 1109(a).  ERISA authorizes a

---

[1] Defendants submitted fund prospectuses and fact sheets as part of their Motion to Dismiss (Doc. No. 23), claiming that these documents are "necessarily embraced by the pleadings." *Batt v. 3M Co.*, No. 25-CV-3149 (ECT/DTS), 2026 WL 674322, at *3 (D. Minn. Mar. 10, 2026) (quotation omitted) (citing *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("In ERISA breach-of-fiduciary-duty cases like this one, the relevant fund prospectuses and plan disclosure documents . . . are embraced by the pleadings." (quotation omitted)).  Scholin does not dispute that the Court may consider such documents, but it "reserves all objections" to materials not embraced by the pleadings and "offered to dispute . . . her allegations."  (Doc. No. 51.)  The Court declines to address this dispute because it would reach the same outcome whether or not it considers these documents.

plan participant to bring a civil action for appropriate relief based on an alleged breach fiduciary duties under Section 1109.  29 U.S.C. § 1132(a)(2).

To state a claim for breach of fiduciary duty under ERISA, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594.  ERISA imposes on fiduciaries "twin duties of loyalty and prudence." *Id.* at 595.  Fiduciaries must act "solely in the interest of plan participants and beneficiaries" and carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* (quoting 29 U.S.C. § 1104(a)(1)).  When evaluating whether a fiduciary acted prudently, courts "focus on the process by which [the fiduciary] makes its decisions rather than the results of those decisions." *Id.*  "A prudently made decision is not actionable, in other words, even if it leads to a bad outcome." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) (citing *Braden*, 588 F.3d at 595).

To state a claim for breach of the duty of prudence and survive a motion to dismiss, a complaint "must allege sufficient detail to demonstrate that the alleged alternative funds provide a meaningful benchmark." *Schave v. CentraCare Health Sys.*, Case No. 22-CV-1555 (WMW/LIB), 2023 WL 1071606, at *6 (D. Minn. Jan 27, 2023) (citing *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278, 280 (8th Cir. 2022) ("The key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark—not just alleging that costs are too high, or returns

are too low." (quotation omitted))). "If the composition of the peer groups remains a mystery because there is no explanation of what types of funds are in each group, much less the criteria used to sort them, a court has no way of knowing whether the peer-group funds provide a sound basis for comparison." *Id.* (quoting *Matousek*, 51 F.4th at 281). Therefore, "a complaint should allege whether the alternative funds hold similar securities, have similar strategies, and reflect a similar risk profile." *Id.* (quotation omitted). *But see Braden*, 588 F.3d at 595–96 (reversing dismissal because the benchmark allegations in the complaint relied on the market index and other shares of the same fund and because tracking the market index was the stated investment goal of the fund). "Simply labeling funds as comparable or as in the same category is insufficient to establish that those funds are meaningful benchmarks." *Phillips v. Cobham Advanced Elec. Sols., Inc.*, Case No. 23-CV-03785-EKL, 2025 WL 2689268, at *5 (N.D. Cal. Sept. 19, 2025) (citation modified). "Plaintiffs must not only identify less expensive or better performing investment options as comparators, but those alternative options must also be similar enough to raise a plausible inference that a prudent investor in like circumstances would not have selected the challenged investment." *Payne v. Hormel Foods Corp.*, Case No. 24-CV-545 (SRN/DTS), 2024 WL 4228613, at *6 (D. Minn. Sept. 18, 2024). [2]

Here, Scholin asserts that American Funds, Vanguard TDFs, T. Rowe Price, and BlackRock are meaningful benchmarks. (Compl. ¶¶ 56, 61.) However, the Complaint

---

[2] The parties do not dispute this legal requirement, and Scholin acknowledges that a complaint must allege comparator TDFs with similar "aims, risks, and potential rewards." (Doc. No. 25 at 9 (citing *McGeathy v. Reinalt-Thomas Corp.*, No. CV-25-01439-PHX-DLR, 2026 WL 617343, at *3–4 (D. Ariz. Mar. 5, 2026)).)

does not include allegations concerning the comparator TDFs' objectives, strategies, or risk profiles. *See e.g.*, *Schave*, 2023 WL 1071606, at *6 (granting a motion to dismiss in part because the complaint failed to allege that the identified comparator funds "hold similar securities, have similar strategies, and reflect a similar risk profile" (quotation omitted)); *see also Payne*, 2024 WL 4228613, at *6 (interpreting binding Eighth Circuit precedent to require consideration of "the totality of the specific allegations" when determining whether a comparator is sufficiently similar to the fund at issue, including the funds' "structure, objectives, strategy, and risk profiles" (citing *Matousek*, 51 F.4th at 281)).  Indeed, the factual allegations in the Complaint do not discuss in any detail the specific glide paths of the identified comparators or their specific investments. *See Phillips*, 2025 WL 2689268, at *7; *see also, e.g.*, *McGeathy*, 2026 WL 617343, at *3 (denying motion to dismiss because the complaint included allegations that "evaluate[] the aims, risks, and potential rewards of each comparator fund" and "describe[] the glide path of each comparator fund and the types of investments they engage in").  Nor do the allegations address how the structures of the identified comparator TDFs are "sufficiently similar" to the AC TDFs. *Payne*, 2024 WL 4228613, at *6.  Absent such allegations, the composition of these comparator TDFs "remains a mystery," *Matousek*, 51 F.4th at 281, and the Complaint fails to allege a claim for breach of the duty of prudence.[3]  The Court

---

[3] The Court is also concerned that the factual allegations in the Complaint fail to plausibly allege that any fiduciary failed to engage in a reasonable decision-making process, focusing instead on allegations that the funds failed to adequately perform.  Likewise, the allegations in the Complaint contain few details concerning the duration and magnitude of the funds' performance.  Nevertheless, in light of its decision to dismiss for insufficient allegations

therefore dismisses this claim without prejudice.[4]

## II.    FAILURE TO MONITOR

"[B]reach of the duty to monitor is a derivative claim that cannot succeed absent an underlying breach of the ERISA-imposed duties of prudence or loyalty." *Dionicio v. U.S. Bancorp*, Case No. 23-CV-0026 (PJS/DLM), 2024 WL 1216519, at *6 (D. Minn. Mar. 21, 2024) (citing *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020)).  Because Scholin has failed to allege a breach of the duty of prudence, the Court also dismisses Scholin's claim for failure to monitor.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss (Doc. No. 21) is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE.

## LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 3, 2026                         */s/ Jeffrey M. Bryan*
                                              Judge Jeffrey M. Bryan
                                              United States District Court

---

concerning a meaningful benchmark, the Court need not determine if the Complaint also fails to plead other important aspects of a claim for breach of the duty of prudence.

[4] Scholin's opposition brief directs the Court to *Snyder v. UnitedHealth Grp., Inc.*, No. 21-CV-1049 (JRT/BRT), 2021 WL 5745852, at *4 (D. Minn. Dec. 2, 2021), in which the Court denied a motion to dismiss because the complaint specifically cited the decision by a national financial investment research firm (Morningstar, Inc.) to classify the Wells Fargo TDFs at issue in the same category ("peer universe") as the identified comparator funds, and because the complaint described how Morningstar made this decision: by looking at the funds' investments, strategic goals, and glide paths.  (Doc. No. 25 at 10.)  Here, by contrast, Scholin's Complaint does not include any similar allegations or references to Morningstar's (or any other investment research firm's) categories.